1                  IN THE UNITED STATES DISTRICT COURT

2                     FOR THE DISTRICT OF NEBRASKA

3

4    UNITED STATES OF AMERICA,        )     4:06CR3145
                                      )
5              Plaintiff,             )
                                      )     Lincoln, Nebraska
6         vs.                         )     May 10, 2007
                                      )     3:32 p.m.
7    O'DARI ZANDAGHE WILEY,           )
                                      )
8              Defendant.             )

9

10

11                  TRANSCRIPT OF PROCEEDINGS

12          BEFORE THE HONORABLE DAVID L. PIESTER

13             UNITED STATES MAGISTRATE JUDGE

14

15   APPEARANCES:

16   For the Plaintiff:     Ms. Sara E. Fullerton
                            Assistant U.S. Attorney
17                          100 Centennial Mall North
                            Suite 487, Federal Building
18                          Lincoln, Nebraska 68508

19

20   For the Defendant:     Mr. John J. Velasquez
                            Attorney at Law
21                          13057 West Center Road, #17
                            P.O. Box 44056
22                          Omaha, Nebraska 68144

23

24   Proceedings transcribed from audiotape, transcript
     produced with computer.
25

1   (On May 10, 2007, at 3:32 p.m., the following

2   proceedings were held:)

3                THE COURT:  Ms. Fullerton.

4                MS. FULLERTON:  Your Honor, this is the

5   matter of United States versus O'Dari Wiley, Docket

6   4:06CR3145, matter comes on for anticipated change

7   of plea.

8                THE COURT:  Mr. Velasquez, is the

9   defense ready to proceed?

10               MR. VELASQUEZ:  We are, Your Honor.

11               THE COURT:  Mr. Wiley, I want to remind

12   you that you have the right to proceed in this kind

13   of a hearing before a United States District Judge.

14   You may also waive that right and consent to

15   proceed before me, a United States Magistrate

16   Judge.  I've been told you wish to proceed before

17   me; is that correct?

18               THE DEFENDANT:  Yes, sir.

19               THE COURT:  Has anyone threatened you

20   with harm or promised you anything in order to get

21   you to consent to proceed before me?

22               THE DEFENDANT:  No, sir.

23               THE COURT:  Do you do so freely and

24   voluntarily?

25               THE DEFENDANT:  Yes, sir.

1                    THE COURT:  All right.  I'll accept the

2       consent.  Go ahead with the rearraignment.

3                    MS. FULLERTON:  Mr. Wiley, the

4       indictment alleges in substance as follows:

5            That between on or about January 1, 2002, and

6       on or about April 11, 2006, you were involved in a

7       conspiracy to distribute and possess with the

8       intent to distribute 50 grams or more of a mixture

9       or substance containing a detectable amount of

10      cocaine base, also known as crack cocaine, a

11      Schedule II controlled substance, in violation of

12      Title 21, United States Code Section 846.

13           Do you understand what you're charged with?

14                   THE DEFENDANT:  Yes, ma'am.

15                   MS. FULLERTON:  The possible penalty for

16      that charge is a term of imprisonment of not less

17      than 10 years nor more than life imprisonment, and

18      a fine of up to $4 million.  Following any term of

19      imprisonment there'd be a term of supervised

20      release of not less than five years.  And there's

21      also a $100 special assessment.

22           Do you understand the possible penalties?

23                   THE DEFENDANT:  Yes.

24                   MS. FULLERTON:  Have you had sufficient

25      time to discuss this case with your counsel?

1          THE DEFENDANT:  Yes.

2          MS. FULLERTON:  Do you need any more

3    time to talk to him before entering a plea today?

4          THE DEFENDANT:  No.

5          THE COURT:  How do you wish to plead at

6    this time?

7          THE DEFENDANT:  Guilty.

8          THE COURT:  Before the Court can accept

9    your guilty plea, we have to make sure it's knowing

10   and intelligent, that is that you know what you're

11   doing, the rights you're giving up and the

12   consequences.  Also that it's voluntary, and also

13   that there is a factual basis for it.

14        The way we do that is to place you under oath

15   and ask you many of the same questions that are on

16   this petition to enter a plea of guilty.  So if

17   you'll stand and raise your right hand, I'll have

18   the clerk administer the oath.

19        O'DARI ZANDAGHE WILEY, DEFENDANT, SWORN

20        THE COURT:  You may be seated.  Now that

21   you're under oath, you must tell the truth.  If you

22   don't, that could be the basis of a perjury charge.

23        First, have you had in the last 24 hours any

24   alcohol or drugs?

25        THE DEFENDANT:  No, sir.

1          THE COURT:  Are you taking any

2  medication?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Are you seeing a doctor for

5  anything?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  Are you feeling okay and

8  thinking clearly?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Were you and Mr. Velasquez

11  together when you went through this petition?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Did he explain to you the

14  meaning of all of these questions?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Did you understand the

17  questions?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  And are all of your answers

20  true?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  As I said, I'll ask you most

23  of them all over again.  So if you have any

24  additional questions that you have that you want to

25  address, as we go through just simply tell me that

1    and we'll do that.

2                    THE DEFENDANT:  Yes, sir.

3                    THE COURT:  The petition says you're 21

4    years old.  You have two-and-a-half years of

5    college.  You've never been hospitalized or treated

6    for substance abuse or mental or emotional

7    conditions.  Is that all correct?

8                    THE DEFENDANT:  Yes, sir.

9                    THE COURT:  Mr. Velasquez has been

10   representing you, has he explained to you the law

11   and the procedures that apply in the case?

12                   THE DEFENDANT:  Yes, sir.

13                   THE COURT:  Has he investigated the case

14   to your satisfaction?

15                   THE DEFENDANT:  Yes, sir.

16                   THE COURT:  Is there anything about his

17   representation of you that you're not satisfied

18   with?

19                   THE DEFENDANT:  No, sir.  No.

20                   THE COURT:  You waive a number of

21   constitutional rights when you enter a guilty plea

22   to a felony offense so I want to go over those with

23   you.

24       You must know you have the right to plead not

25   guilty and to require the government to prove its

1    case against you in court.  Do you understand that?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  If you did that, you'd have

4    the right to a speedy and a public trial before a

5    jury of 12 persons selected from your peers.  Do

6    you understand that?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  You'd also have the right to

9    counsel at all stages of the case and if you

10   couldn't afford to hire your own attorney, one

11   would be appointed to represent you at no cost to

12   you.  Do you understand that?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  You'd also have the right to

15   be present at the trial and to see and hear every

16   one of the witnesses who testifies against you,

17   and, through your attorney, to cross-examine them.

18   Do you understand that?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  You'd also have the right to

21   use the subpoena power of the Court to compel the

22   attendance and testimony of others to be defense

23   witnesses for you, as well as production of other

24   evidence.  Do you understand that?

25           THE DEFENDANT:  Yes, sir.

1           THE COURT:  You'd also have the right to

2    take the witness stand and testify, or not, as you

3    choose, and no one can force you to take the

4    witness stand and testify at the trial.  Do you

5    understand that?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  And if you chose not to

8    testify, the jury could not take that silence as

9    evidence of guilt.  Do you understand that?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  Finally, you'd have the

12    right to be presumed innocent.  That means you'd

13    have the right to be found innocent unless and

14    until the government proved each and every element

15    of the offense it charged you with beyond a

16    reasonable doubt to the unanimous satisfaction of

17    all 12 members of the jury.  Do you understand

18    that?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  Now, if the Court accepts

21    your guilty plea, you'll be found guilty without

22    any trial, the case will move forward to the

23    sentencing phase, and you will have given up all of

24    those constitutional rights except the right to

25    counsel.  Do you understand that?

1                    THE DEFENDANT:  Yes, sir.

2                    THE COURT:  There are consequences, of

3      course, to your guilty plea.  First, the possible

4      sentence.  Do you understand unless there is some

5      downward departure from the statutory minimum, that

6      as a result of your plea here today you'll be going

7      to prison for at least 10 years?

8                    THE DEFENDANT:  Yes, sir.

9                    THE COURT:  And it could be for as long

10     as your entire life.  Do you understand that?

11                   THE DEFENDANT:  Yes, sir.

12                   THE COURT:  You could also be fined up

13     to $4 million.  You could have some combination of

14     fine and imprisonment.  If there is imprisonment,

15     then afterwards there would be at least five years

16     of supervised release.  And there's also a $100

17     special assessment.  Is that also your

18     understanding?

19                   THE DEFENDANT:  Yes, sir.

20                   THE COURT:  There are other

21     consequences.  You lose the right to vote, hold

22     public office, serve on a jury, and possess any

23     kind of a firearm.  Do you understand that?

24                   THE DEFENDANT:  Yes, sir.

25                   THE COURT:  You could also be ineligible

1    for various loan or grant programs funded by the

2    federal or state governments, also from certain

3    professional or commercial licenses.  Do you

4    understand that?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Are you now on probation or

7    parole from any court?

8              THE DEFENDANT:  No, sir, just pretrial

9    release.

10             THE COURT:  Okay.  Is there any

11   restitution here?

12             MS. FULLERTON:  No, Your Honor.

13             THE COURT:  Pleading guilty may not get

14   you any benefit in sentence.  By that I mean the

15   judge can give you the same sentence whether you

16   plead guilty or you go to trial and are found

17   guilty.  Do you understand that?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  You'll be sentenced in

20   accordance with the sentencing guidelines.  Have

21   you and Mr. Velasquez talked about them?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  They are a system of

24   equalizing sentences across the nation for the same

25   or similar crimes.  They evaluate the seriousness

1    of the crime, the seriousness of any criminal

2    history the defendant may have, the defendant's

3    involvement in the crime, and various other

4    factors.

5         Those are used then in developing a range of

6    possible sentences called the sentencing guideline

7    range, and the judge is expected to sentence the

8    defendant within that range.  Is that your general

9    understanding?

10               THE DEFENDANT:  Yes, sir.

11               THE COURT:  In determining your sentence

12   Judge Kopf will examine what we call all relevant

13   conduct.  That means he'll consider all of the

14   facts and circumstances surrounding the offense

15   even if you're pleading guilty to less than all of

16   them.  Do you understand that?

17               THE DEFENDANT:  Yes, sir.

18               THE COURT:  There are some things under

19   the sentencing guidelines that could increase your

20   sentence.  For example, if you tell the probation

21   officer who's preparing the presentence report

22   something that isn't true, that could increase your

23   sentence.

24        Likewise, prior convictions in the last 15

25   years; if you committed this offense less than two

1    years after being released from prison; if you

2    committed this offense while you were on probation

3    or parole or supervised release or escape status;

4    or if you committed this offense as part of a

5    pattern of criminal conduct from which you got a

6    substantial portion of your income; in addition, in

7    this case, if you had two prior felony convictions

8    for either crimes of violence or drug trafficking,

9    that could substantially increase your sentence as

10   a career offender.

11       Do you understand that any or all of those

12   factors if they apply to you could increase your

13   sentence?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  In addition, if you

16   cooperate with the government and provide to them

17   what they say is substantial assistance, then your

18   sentence could be reduced under the guidelines as

19   well.  Do you understand that?

20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  Ordinarily, once the

22   sentencing guideline range has been determined,

23   Judge Kopf will sentence a defendant within that

24   range.  But he's not required by the law to do

25   that.  The sentencing guidelines are not mandatory.

1    They're only advisory.  So as we sit here today

2    there's no assurance that your sentence is going to

3    be within the sentencing guideline range.  Do you

4    understand that?

5                    THE DEFENDANT:  Yes, sir.

6                    THE COURT:  You must know that if you

7    are sentenced to a period of incarceration, you

8    will serve all of that time in prison.  There is no

9    parole.  So your time in custody can be reduced

10   only by whatever good time you may earn, if you

11   earn it, up to 54 days a year.  Do you understand

12   that?

13                   THE DEFENDANT:  Yes, sir.

14                   THE COURT:  Then after any incarceration

15   would be supervised release.  Have you and Mr.

16   Velasquez talked about that?

17                   THE DEFENDANT:  Yes, sir.

18                   THE COURT:  Essentially, you'll no

19   longer be in custody, but you'll be supervised by a

20   probation officer.  You'll have to report to that

21   officer from time to time and you'll have to abide

22   by various conditions.  Those conditions are

23   imposed by this Court.  They may restrict where you

24   live or work or travel.

25        You can be subject to search, subject to drug

1    testing, required to participate in drug treatment

2    or other counseling.  There could be any number of

3    conditions along those lines.  Is that your general

4    understanding of it?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  You must know that if you

7    violate any of your conditions of supervised

8    release, that release can be revoked and you can be

9    required to serve all of that time in prison.  Do

10   you understand that?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  In addition, if you were to

13   do something that was not only a violation of your

14   conditions of release but also another crime, then

15   not only could you lose your supervised release on

16   this sentence but you could also be sentenced more

17   harshly on that crime.  Do you understand that?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Tell me about the plea

20   agreement.

21             MS. FULLERTON:  Your Honor, in essence

22   the plea agreement is for Mr. Wiley to plead guilty

23   to Count I of the indictment.

24       Provided that he demonstrates acceptance of

25   responsibility to the probation officer and the

1    Court, the government would agree that he would

2    qualify for the full three-level reduction for

3    acceptance of responsibility.

4        Government agrees that Mr. Wiley will not be

5    federally prosecuted in the District of Nebraska

6    for violations of controlled substances law other

7    than the charge set out in Count I of the

8    indictment.  This agreement is limited to

9    statements and acts of criminal conduct concerning

10   controlled substances which he committed in the

11   District of Nebraska prior to his initial

12   appearance in this case on October 3rd of 2006.

13       This is a non-cooperation agreement.  If there

14   were to be cooperation, there would have to be

15   another document signed in the future.

16       Parties agree that Mr. Wiley is responsible

17   beyond a reasonable doubt for at least 50 grams of

18   a mixture or substance containing a detectable

19   amount of cocaine base and that his base offense

20   level shall not be less than 32.

21       The parties agree that the determination of

22   the amount of cocaine base in excess of 50 grams

23   for which he should be held responsible will be

24   reserved for disposition through the sentencing

25   process.  And both parties reserve the right to

1   present evidence on that issue if necessary.

2        The parties further agree that Mr. Wiley

3   should not receive any upward or downward

4   adjustments for role in the offense.  And Mr. Wiley

5   agrees not to seek any downward departure or

6   deviation from the sentencing guidelines for any

7   reason.

8        And that, in substance, is the plea agreement.

9             THE COURT:  Mr. Velasquez, is that your

10  understanding of the main points of the plea

11  agreement?

12            MR. VELASQUEZ:  Yes, Your Honor.

13            THE COURT:  Mr. Wiley, is that your

14  understanding?

15            THE DEFENDANT:  Yes, sir.

16            THE COURT:  Have you and Mr. Velasquez

17  gone over this plea agreement letter paragraph by

18  paragraph?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  Did he explain each of these

21  provisions to you?

22            THE DEFENDANT:  Yes, sir.

23            THE COURT:  Did he answer all your

24  questions about them?

25            THE DEFENDANT:  Yes, sir.

1            THE COURT:  Do you have any more

2    questions about any of them now?

3            THE DEFENDANT:  No, sir.

4            THE COURT:  Are you satisfied that you

5    know and understand this plea agreement and you can

6    abide by it?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Why did you make an

9    agreement with the government?

10            THE DEFENDANT:  Because I was guilty,

11    and also I have two little sons I need to raise.

12            THE COURT:  Okay.  You must know that

13    your agreement is only between you and the

14    government.  It's not binding on the Court.  Do you

15    understand that?

16            THE DEFENDANT:  Yes, sir.

17            THE COURT:  I'll recommend to the

18    sentencing judge that he accept your plea

19    agreement.  But he's not required by law to accept

20    it.  He's allowed to either accept it or reject it.

21    If he rejects it, he doesn't have to give you a

22    chance to withdraw your guilty plea.  Do you

23    understand that?

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  Other than this plea

1    agreement has anyone promised you anything in order

2    to get you to plead guilty?

3                THE DEFENDANT:  No, sir.

4                THE COURT:  Has anybody threatened you

5    or anyone close to you with any sort of harm in

6    order to get you to plead guilty?

7                THE DEFENDANT:  No, sir.

8                THE COURT:  Has anybody told you that

9    you would get a particularly light sentence by

10   pleading guilty?

11               THE DEFENDANT:  No, sir.

12               THE COURT:  And has anybody told you

13   exactly what your sentence will be?

14               THE DEFENDANT:  No, sir.

15               THE COURT:  Are you pleading guilty for

16   any reason we've not talked about here today?

17               THE DEFENDANT:  No, sir.

18               THE COURT:  Tell me about the factual

19   basis.

20               MS. FULLERTON:  Your Honor, if this

21   matter would go to trial the government believes

22   the following information would go before the jury:

23        Robin Jackson has a cooperation agreement with

24   the government.  She told officers that she met

25   Tallas Harris, Mr. Wiley's codefendant, through a

1    Clemet Bradley (phonetic) who was her source for

2    crack cocaine in early 2003.

3        A short time after that she said that Tallas

4    Harris introduced her to Mr. Wiley for the purpose

5    of her buying crack from Mr. Wiley.  She said that

6    Harris and Wiley were essentially working as

7    partners in the distribution of crack; that if

8    Harris was not available, he would send Mr. Wiley

9    to deal with her.

10    She would call both of them to set up deals,

11    and she said she thought both of their phones were

12    with the same company and were listed under one of

13    their names.

14    She said that she usually bought half ounce

15    quantities from Mr. Harris, and occasionally

16    smaller quantities.  She said she bought mostly

17    half-ounce quantities from Mr. Wiley.  And she said

18    she thought that their source was Clemet Bradley,

19    who was in Chicago.

20    She said that, for example, Harris would be

21    gone for a few days, she would hear he was in

22    Chicago, and when he returned there would be crack

23    for them to sell.

24    She said she would call both of them and order

25    specific amounts of crack, which they would deliver

1    to her.  She estimated that between early 2003 and

2    August of 2005, she obtained a total of 10 ounces

3    of crack from Harris and 10 ounces from Wiley.

4        Jason Robertson also pled guilty to a -- a

5    crack charge and agreed to cooperate.  He testified

6    in Jerome Coleman's trial that he was buying crack

7    off and on from Mr. Coleman between 1996 and

8    October of 2005.

9        He said that he was told by Coleman that

10   Tallas Harris and O'Dari Wiley had been stopped by

11   the police in Illinois with a lot of money, and

12   that Coleman was going to try to get it back.

13       Theo Harvey also pled guilty to a federal

14   charge and agreed to cooperate.  He had worked at

15   Coleman's shop and was selling to another person

16   who worked there who mentioned to him that Harris

17   and Wiley had put in some money on a trip to

18   Chicago to get crack, and had lost the money.

19       On January 11th of 2005, Sergeant Blanks of

20   the Illinois State Police stopped a car driven by

21   O'Dari Wiley in which Tallas Harris was a

22   passenger.

23       They -- the car was rented by Jerome Coleman,

24   who was not present in the vehicle.  Both Mr.

25   Harris and Mr. Wiley told somewhat different

1    stories about where they were going.  Sergeant

2    Blanks ultimately decided he was going to tow the

3    vehicle because the person who had rented it was

4    not present.

5        And he was preparing to do an -- prepared to

6    do an inventory search of the vehicle.  During the

7    inventory search, prior to having it towed, he

8    found some marijuana residue on the passenger side

9    floorboard as well as an odor of marijuana in the

10   vehicle.

11       Determined he had probable cause to search,

12   searched the vehicle, found a blue suitcase

13   containing male clothing in the trunk.  That

14   suitcase was claimed by Mr. Wiley.  And it

15   contained two plastic grocery bags with large

16   bundles of cash, for a total of $13,090 in cash.

17       Both Mr. Wiley and Mr. Harris essentially

18   claimed that money.  Mr. Wiley said it was money

19   he'd saved since he was five or six years old.  Mr.

20   Harris said it was money he was going to use to

21   have some rap CDs pressed that he had made.

22       And that, in essence, is the evidence.

23            THE COURT:   Mr. Velasquez, do you agree

24   that if the case were to go to trial that

25   information would be presented to the jury?

1              MR. VELASQUEZ:  Yes, sir.

2              THE COURT:  Mr. Wiley, do you agree?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Is that information true?

5              THE DEFENDANT:  No, sir.

6              THE COURT:  Tell me -- well, let's do it

7    this way.  Tell me what you did that makes you

8    guilty.

9              THE DEFENDANT:  Well, considering to the

10   paper, I wasn't here at the first beginning of

11   2003.  I made it here in I think September of 2003.

12   And I had just graduated from high school May 23rd

13   of 2003.  But on my behalf, I was involved in drugs

14   or whatever.

15             THE COURT:  Well, let me ask you some

16   specifics.  Was your involvement -- well, it

17   would've -- if you said you didn't get here until

18   2003, it would've been after 2002 obviously, up

19   until on or about April 11, 2006?  Not all that

20   time, but at times between those dates.

21             THE DEFENDANT:  I was involved in drugs.

22             THE COURT:  Was it between those dates?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  And was at least some of it

25   in Nebraska --

1                    THE DEFENDANT:  Yes, sir.

2                    THE COURT:  -- some of your actions?

3                    THE DEFENDANT:  Yes, sir.

4                    THE COURT:  Okay.  And you knew what you

5     were dealing in was crack cocaine?

6                    THE DEFENDANT:  Yes, sir.

7                    THE COURT:  You knew that was illegal?

8                    THE DEFENDANT:  Yes, sir.

9                    THE COURT:  And you did it in accordance

10    with whatever your arrangements were with at least

11    some of these other people; is that right?

12                   THE DEFENDANT:  Yes, sir.

13                   THE COURT:  And do you also agree you're

14    responsible for at least 50 grams of a mixture

15    containing crack cocaine?

16                   THE DEFENDANT:  Yes, sir.

17                   THE COURT:  I think we've gone over

18    about everything.  Do you have any questions you

19    want to address before we go any further?

20                   THE DEFENDANT:  No, sir.

21                   THE COURT:  Do you still want to plead

22    guilty?

23                   THE DEFENDANT:  Yes, sir.

24                   THE COURT:  Ms. Fullerton, are there

25    additional questions I should ask the defendant?

1                    MS. FULLERTON:  No, Your Honor.

2                    THE COURT:  Mr. Velasquez?

3                    MR. VELASQUEZ:  No, sir.

4                    THE COURT:  Ms. Fullerton, are you

5     satisfied that the plea is knowing and intelligent,

6     that it's voluntarily entered and that there's a

7     factual basis for it?

8                    MS. FULLERTON:  Yes, Your Honor.

9                    THE COURT:  Mr. Velasquez, are you?

10                   MR. VELASQUEZ:  Yes, sir.

11                   THE COURT:  O'Dari Zandaghe Wiley -- I

12    apologize for the last pronunciation of the middle

13    name -- once more for the record, how do you plead?

14                   THE DEFENDANT:  Guilty.

15                   THE COURT:  I find that entry of the

16    plea is knowing and intelligent, that it's

17    voluntarily entered, and that there's a factual

18    basis for it.  I therefore am signing a report and

19    recommendation that the plea and the plea agreement

20    be accepted.

21         On the assumption that it will be accepted,

22    I'll issue the order establishing the sentencing

23    schedule in the case.  Among other things it

24    establishes the sentencing date at August 2, 2007,

25    at 12:30 in the afternoon.  That is here in this

1    building in Courtroom No. 1, which is at the west

2    end of the hallway.  Once again, August 2nd at

3    12:30 before Judge Kopf.

4        Is there anything further we should address?

5            MS. FULLERTON:  No, Your Honor.

6            MR. VELASQUEZ:  No, sir.

7            THE COURT:  Sir, I will release you

8    under the same conditions.  You are obviously to be

9    here for your sentencing date, and stay in touch

10   with your attorney and your supervising officer.

11       Is there anything else?

12           MS. FULLERTON:  No, I don't think so.

13           MR. VELASQUEZ:  No, sir.

14           THE COURT:  Okay.  On behalf of the --

15   of the Court, I want to acknowledge what you've

16   done.  Not only are you doing the right thing,

17   you're also putting yourself in a position to at

18   least perhaps get a better sentence.

19       You're saving yourself the grief of going

20   through a trial.  You're saving the -- the Court

21   and the -- the  government the time and money it

22   takes to have a trial.

23       So even though obviously you've made some very

24   bad choices, your decision today was a good one and

25   I commend you for it.

1          THE DEFENDANT:  Thank you.

2          THE COURT:  We'll be in recess.

3       (3:54 p.m., recessed.)

4       I, Vicki L. Jarchow, Transcriber, certify that

5    the foregoing is a correct transcript from the

6    official electronic sound recording of the

7    proceedings in the above-entitled matter.

8

9    Vicki L. Jarchow              May 23, 2007

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25