IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case No. 4:06-CR-3145 |
| | ) |
| v. | ) |
| | ) Hon. Richard G. Kopf |
| O'DARI ZANDAGHE WILEY, | ) |
| | ) |
| Defendant. | ) |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
O'DARI Z. WILEY'S MOTION FOR COMPASSIONATE RELEASE**

  Defendant O'Dari Z. Wiley has previously petitioned this Court *pro se* for reduction of his sentence to time served and compassionate release under 18 U.S.C. § 3582(c)(1)(A) in light of the ongoing COVID-19 pandemic. On June 3, this Court held Mr. Wiley's motion in abeyance for 60 days so that Mr. Wiley could demonstrate that he had requested appropriate administrative relief through the Bureau of Prisons. Now, through undersigned counsel, Mr. Wiley respectfully renews his request, submits evidence of his unsuccessful pursuit of administrative remedies, and asks the Court to allow the below supplemental briefing in support of his motion. Mr. Wiley's motion should be granted for the "extraordinary and compelling reasons" that Mr. Wiley's heart disease makes him especially vulnerable to serious illness or death should he contract COVID-19, and that he cannot adequately protect himself from being exposed to COVID-19 while still incarcerated.

**BACKGROUND**

  Mr. Wiley pled guilty in 2007 to one count of conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846. After completing a separate state sentence in Nebraska and receiving adjustments to his federal sentence, Mr. Wiley is currently serving a federal

1

sentence of 97 months of imprisonment, to be followed by a term of five years of supervised release. Mr. Wiley is in the custody of the Bureau of Prisons at FCI Beaumont Medium in Beaumont, Texas, about 90 miles east of Houston.

Mr. Wiley is 35 years old. After roughly two weeks of unexplained and untreated chest pains, he suffered a sudden and severe heart attack on November 26, 2018.[1] Since then, he has experienced recurrent chest pain and shortness of breath, and has been diagnosed with coronary artery disease and hypertension, among other heart ailments. *See* Ex. B, WILEY-2019-00311–16. A left heart catheterization in August 2019 revealed that his proximal left anterior descending (LAD) artery was "significantly aneurysmal." *See* Ex. B, WILEY-2019-00323–24. The Cleveland Clinic reports that because the LAD artery supplies a significant proportion of blood to the heart, heart attacks involving this artery are known to be particularly deadly and have earned the sobriquet "widowmaker heart attacks." *See Why a "Widowmaker" Heart Attack Is So Dangerous*, Cleveland Clinic HealthEssentials (Apr. 9, 2019), https://health.clevelandclinic.org/why-a-widowmaker-heart-attack-is-so-dangerous/. Mr. Wiley was told by medical personnel at the time that this was the type of heart attack he suffered in 2018, and his medical records indicate that he received an LAD stent. *See* Ex. B, WILEY-2020-00026. In addition, Mr. Wiley has a family history of severe heart disease at an unusually young age: his brother died of a heart attack at 38. *See* Ex. B, WILEY-2019-00319.

Although risk from COVID-19 is strongly correlated with age, underlying heart

---

[1] Mr. Wiley's counsel has requested Mr. Wiley's full medical records from the Bureau of Prisons for at least the period beginning November 1, 2018. BOP produced Mr. Wiley's medical records only for 2019 and 2020, and indicated to counsel that this was current BOP policy, as a triage measure in response to an increased volume of requests for medical records. *See* July 6, 2020 Email from T. Allen, Ex. A. Counsel immediately renewed the request for records covering November and December 2018, but has not yet received a response from BOP. Nonetheless, Mr. Wiley's subsequent treatment records from 2019 and 2020 provide evidence for his November 2018 heart attack(s) and ongoing cardiac treatment.

problems significantly increase the danger of severe disease or death from COVID-19, even in younger patients. The CDC lists "Serious Heart Conditions," including coronary artery disease and hypertension, among the conditions that increase a patient's risk of "severe illness from COVID-19" at any age. *See* Centers for Disease Control and Prevention ("CDC"), *Certain Medical Conditions and Risk for Severe COVID-19 Illness* (July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. In June 2020, the CDC released an analysis of more than 1.3 million confirmed COVID-19 cases showing that patients in their 30s with underlying health problems – including heart disease/hypertension – were more than five times likelier to be hospitalized (24.2% vs. 4.4%), five times likelier to be admitted to an ICU (5.3% vs. 0.9%), and **twenty-eight times likelier to die** (2.8% vs. 0.1%) than people in the same age cohort without underlying conditions. *See* Ex. C, Erin K. Stokes, Laura D. Zambrano, Kayla N. Anderson et al., *Coronavirus Disease 2019 Case Surveillance – United States, January 22–May 30, 2020*, at 762–63 (June 19, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm6924e2-H.pdf.

Fearing that his heart disease placed him at severe risk of serious illness or death should he contract COVID-19, Mr. Wiley initially raised a request for compassionate release verbally with M. K. Lewis, the warden at FCI Beaumont, on April 12, 2020. *See* June 8, 2020 Letter from O'Dari Z. Wiley, Ex. D. Mr. Wiley submitted a written request through prison medical staff on April 16, but never received a response to this first attempt. On June 1, more than 30 days after his initial request, Mr. Wiley moved this Court for compassionate release *pro se*. (ECF No. 163.) This Court noted that Mr. Wiley had attached "detailed medical records showing that he suffers from a serious heart condition," but placed Mr. Wiley's motion in abeyance for 60 days so that Mr. Wiley could produce evidence that he had sought

administrative relief. (ECF No. 164.) In response to this Court's Order and after attempting informal resolution through his unit manager in early–mid June, Mr. Wiley submitted another letter to Warden Lewis on June 25, along with a Request for Administrative Remedy (BP-9) form with his request for compassionate release. *See* Ex. E. On June 29, Warden Lewis denied Mr. Wiley's request on the grounds that his "asserted medical conditions do not currently warrant" compassionate release. *See* Ex. F.

COVID-19 is actively spreading in the FCI Beaumont Medium facility and the greater BOP Beaumont complex. As of July 30, 2020, the Bureau of Prisons reports that there are 14 confirmed "active cases" of COVID-19 among inmates and six "active cases" among staff at FCI Beaumont Medium. *See* Ex. G. However, BOP has reported performing only 231 COVID-19 tests at FCI Beaumont Medium and has had at least 63 confirmed inmate and staff cases so far, in a facility with a total inmate population of 1441. Nor is FCI Beaumont Medium the hardest-hit prison in the complex. FCI Beaumont Low, a low-security institution in the same complex, has had 478 total cases, although BOP reports that only 11 are currently "active."

## ARGUMENT

Under 18 U.S.C. § 3582, upon a defendant's motion, a court may modify a defendant's sentence and grant compassionate release if "extraordinary and compelling reasons" warrant doing so.[2] As amended by the First Step Act, § 3582(c)(1)(A)(i) permits courts to consider motions filed by the defendant so long as "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

---

[2] In 2018, Congress passed the First Step Act, which amended 18 U.S.C. § 3582(c) to allow defendants to move for a reduction of their sentence. *See* Section 603 of the First Step Act, Pub. L. No. 226-391, § 603, 132 Stat. 5194, 5238-40 (2018). Previously, prisoners were reliant on the Bureau of Prisons to bring compassionate release petitions on their behalf.

defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  In this case, the timing provision has been satisfied.  Mr. Wiley submitted a request for reduction in sentence to Warden Lewis no later than June 25, more than 30 days ago, providing the basis for the Court to consider Mr. Wiley's motion.

If a court finds "extraordinary and compelling reasons" warrant a sentence reduction, a court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A).  Pursuant to these statutory requirements, the court may—and in Mr. Wiley's case, should, for the reasons described below—grant compassionate release.

I.   **Mr. Wiley's Heart Problems and Particular Vulnerability to COVID-19 Constitute "Extraordinary and Compelling Reasons" Justifying Compassionate Release**

Mr. Wiley's heart conditions and his extreme vulnerability in the prison environment are "extraordinary and compelling reasons" for his release.  The CDC has identified several factors that put individuals at higher risk for severe illness or death from COVID-19.  According to the CDC, "[p]eople of any age" with "[s]erious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies" are definitively "**at increased risk** of severe illness from COVID-19."  CDC, *Certain Medical Conditions and Risk for Severe COVID-19 Illness* (July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (emphasis in original).  The CDC also states that people with hypertension may also be at increased risk for severe illness.  *Id.*

The CDC advises Americans that "**[t]he best way to prevent illness is to avoid being exposed to this virus.**"  CDC, *How to Protect Yourself and Others* (Apr. 24, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (emphasis in original).  It recommends measures that have now become widely familiar: rigorous

handwashing, social distancing, face masking, etc. *Id.* But in its guidance for correctional facilities, the CDC also recognizes:

- Incarcerated/detained persons live, work, eat, study, and participate in activities within congregate environments, heightening the potential for SARS-CoV-2 to spread once introduced.

    . . .

- Many opportunities exist for SARS-CoV-2 to be introduced into a correctional or detention facility, including daily staff movements; transfer of incarcerated/detained persons between facilities and systems, to court appearances, and to outside medical visits; and visits from family, legal representatives, and other community members.

    . . .

- The ability of incarcerated/detained persons to exercise disease prevention measures (e.g., frequent hand washing) may be limited and is determined by the supplies provided in the facility and by security considerations. Many facilities restrict access to soap and paper towels and prohibit alcohol-based hand sanitizer and many disinfectants.

- Social distancing options within correctional and detention settings may be limited due to crowded living conditions.

- Incarcerated/detained persons may hesitate to report symptoms of COVID-19 or seek medical care due to co-pay requirements, stigma and fear of isolation.

- Incarcerated/detained persons and staff may have underlying medical conditions that increase their risk of severe illness from COVID-19.

- Options for medical isolation for people with COVID-19 are limited and vary depending on the type and size of facility, as well as the current level of available capacity, which is partly based on medical isolation needs for other conditions.

CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (July 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community

at large, and continues to spread at an alarming rate. *See* Federal Bureau of Prisons, *COVID-19 Update*, https://www.bop.gov/coronavirus/index.jsp (last accessed July 30, 2020). At the end of June, the New York Times Editorial Board noted that, according to that newspaper's reporting, all five of the country's most intense COVID-19 hot spots were correctional facilities. *See The Coronavirus Crisis Inside Prisons Won't Stay Behind Bars*, N.Y. Times (June 25, 2020), https://www.nytimes.com/2020/06/25/opinion/coronavirus-prisons-compassionate-release.html.

Since the beginning of this crisis, the universally-recommended antidote to the danger of COVID-19 transmission in prisons has been simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[3] The Department of Justice agrees. In recent cases, the government has taken the position that, according to DOJ guidance, "inmates who suffer from a condition identified . . . as putting them at higher risk for severe illness from COVID-19 and who are not expected to recover from that condition, present an extraordinary and compelling reason to be considered for compassionate release." *Wise v. United States*, No. ELH-18-72, 2020 U.S. Dist. LEXIS 90431, at *13 n.4 (D. Md. May 20, 2020); *see also United States v. Shannon*, No. 13 CR 535, 2020 U.S. Dist. LEXIS 112245, at *6–

---

[3] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See* Fair and Just Prosecution, Letter to President Trump (updated Apr. 16, 2020), https://fairandjustprosecution.org/wp-content/uploads/2020/04/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf. The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly and medically vulnerable inmates, including those with cardiovascular disease. *See* The Justice Collaborative, Letter to President Trump (Mar. 27, 2020), https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf.

7 (N. D. Ill. June 26, 2020).

In summary, serious heart conditions including coronary artery disease indisputably increase a person's risk of severe illness or death from COVID-19. At the same time, unalterable characteristics of the prison environment make it nearly impossible to control the virus's spread, and the disease is in fact all but running rampant in the federal prison system. Accordingly, courts across the country have granted compassionate release to non-elderly defendants, like Mr. Wiley, on the grounds that they are at increased risk from COVID-19 due to coronary artery disease, hypertension, or a history of previous heart attacks. *See, e.g.*, *United States v. Miller*, No. 17-CR-30032, 2020 U.S. Dist. LEXIS 133281, at *5–8 (C.D. Ill. July 28, 2020); *United States v. Gardner*, No. 14-CR-20735, 2020 U.S. Dist. LEXIS 129160, at *15–19 (E.D. Mich. July 22, 2020); *United States v. Jones*, No. 13-CR-577, 2020 U.S. Dist. LEXIS 121717, at *7–9 (E.D. Pa. July 9, 2020); *United States v. Salvagno*, No. 5:02-CR-51, 2020 U.S. Dist. LEXIS 109879, at *60–64 (N.D.N.Y. June 22, 2020); *United States v. Sedge*, No. 16-CR-537, 2020 U.S. Dist. LEXIS 85540, at *6–9 (E.D.N.Y. May 13, 2020).

Mr. Wiley's condition is no different. His recent severe heart attack and ongoing coronary artery disease and other heart conditions place him at a severe risk of serious illness or death should he contract COVID-19, and he cannot effectively protect himself from COVID-19 while in the prison environment. As other courts have recognized, during this pandemic these are "extraordinary and compelling circumstances" justifying his immediate release.

II. **The Relevant § 3553(a) Factors Warrant Reducing Mr. Wiley's Sentence to Time Served**

Even if a defendant demonstrates "extraordinary and compelling reasons" for a sentence reduction and compassionate release, this Court is obligated to ensure that Mr. Wiley's reduced sentence will still comply with the sentencing factors set out in 18 U.S.C. § 3553(a). 18

8

U.S.C. § 3582(c)(1)(A).  Here, because of Mr. Wiley's personal characteristics, the age of the crime, and the punishment he has already faced, the § 3553(a) sentencing factors warrant relief.

First, this Court must consider the nature of Mr. Wiley's offense and his personal characteristics.  Mr. Wiley is serving a 97-month sentence for conspiracy to distribute crack cocaine.  This is undoubtedly a serious offense, and Mr. Wiley was found responsible for a significant quantity of contraband.  However, Mr. Wiley long ago accepted responsibility for his crimes and is determined not to repeat them.  He is not the same person now, at 35, as he was in his early twenties when he committed the offense for which he is currently imprisoned.  This Court is already familiar with Mr. Wiley's skills as a thoughtful and diligent self-advocate, despite his challenging health circumstances.  Furthermore, if released, Mr. Wiley will be enmeshed in the support network provided by his parents and family, which will provide powerful guidance away from recidivism.  *See* Release Plan, Ex. H.  He has no history of infractions in prison and has used his time to acquire college credits and study trade and skill courses to help him support himself after he gets out.  These characteristics all cut in favor of his release.

In addition to considering Mr. Wiley's personal characteristics, this court must also satisfy itself that Mr. Wiley's reduced sentence still reflects the seriousness of his offense, promotes respect for the law, provides just punishment and adequate deterrence, and protects the public from further crimes.  It does, on all counts.  As just stated, Mr. Wiley's age, fragile health, and support in his desire for a fresh start make him unlikely to commit further criminal activity.

It is true that Mr. Wiley still has a significant amount of time left to serve on his sentence.  But this is not an insuperable obstacle to relief.  Numerous courts have granted compassionate release in appropriate cases for defendants vulnerable to COVID-19,

9

notwithstanding that the defendant still had a substantial amount or even the majority of his or her sentence remaining. *See, e.g.*, *United States v. Kelley*, No. 16-CR-00038, 2020 U.S. Dist. LEXIS 96719 (N.D. Cal. June 2, 2020) (served 49 months of 120-month sentence); *Loyd v. United States*, No. 15-CR-20394, 2020 U.S. Dist. LEXIS 89357 (E.D. Mich. May 21, 2020) (served roughly three years of 120-month sentence); *United States v. Barber*, No. 6:18-CR-446, 2020 U.S. Dist. LEXIS 83457 (D. Or. May 12, 2020) (served 8.5 months of 60-month sentence); *United States v. Delgado*, No. 3:18-CR-17, 2020 U.S. Dist. LEXIS 84469 (D. Conn. Apr. 30, 2020) (served 29 months of 120-month sentence).

In addition, Mr. Wiley's current sentence alone does not reflect the full punishment he has faced for his offenses. After he was charged with and pled guilty to his federal drug offense, Mr. Wiley served and completed a state sentence for other crimes dating back to roughly the same time. Including the several months Mr. Wiley spent in federal pre-trial custody in 2006 and 2007, he has been in either state or federal incarceration almost continuously for nearly the last fourteen years. While the federal government undoubtedly has an important sovereign interest in vindicating its own laws with its own punishment, the government cannot argue that Mr. Wiley has been allowed to escape serious justice for the crimes he committed nearly a decade and a half ago, nor that his sentence has been inadequate to deter him and others from future similar criminal activity.

## CONCLUSION

It is unnecessary to belabor to the Court the unprecedented course of the COVID-19 pandemic, nor the heightened danger it poses in the prison environment. After half a year, the characteristics of the disease and the consequences of its spread for our society have become sadly familiar to all. This deadly contagion, and the particular threat it poses to Mr. Wiley as a

result of his underlying heart problems, constitute extraordinary and compelling reasons to grant his motion for compassionate release. Accordingly, and for the foregoing reasons, Mr. Wiley respectfully asks this Court to reduce his sentence to time served.

Date: August 3, 2020

Respectfully submitted,

/s/ Shawn F. Summers
Shawn F. Summers
PA Bar No. 327471 (*pro hac vice*)
Terence M. Grugan
PA Bar No. 307211 (*pro hac vice* pending)
**BALLARD SPAHR LLP**
1735 Market St., 51st Floor
Philadelphia, PA 19103
Telephone: 215.864.8347
Facsimile: 215.864.8999
E-mail: summerss@ballardspahr.com

*Attorneys pro bono for O'Dari Z. Wiley*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:06-CR-3145 |
| ) | |
| v. ) | |
| ) | Hon. Richard G. Kopf |
| O'DARI ZANDAGHE WILEY, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all registered participants. I also hereby certify that, to my knowledge, there are no non-CM/ECF participants for whom non-electronic service by mail or in person is required.

/s/ Shawn F. Summers
Shawn F. Summers
PA Bar No. 327471 (*pro hac vice*)
Terence M. Grugan
PA Bar No. 307211 (*pro hac vice* pending)
**BALLARD SPAHR LLP**
1735 Market St., 51st Floor
Philadelphia, PA 19103
Telephone: 215.864.8347
Facsimile: 215.864.8999
E-mail: summerss@ballardspahr.com

*Attorneys pro bono for O'Dari Z. Wiley*